## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:08CR00024-005 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **TYREE LAMAR SLADE,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; Tyree Lamar Slade, Pro Se Defendant.*

The defendant, Tyree Lamar Slade, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging that he should be resentenced in light of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc).  The government moved to dismiss, and Slade responded, making the matter now ripe for consideration.  After review of the record, I find that under the terms of his valid Plea Agreement, Slade waived his right to bring this motion.

I

Defendant Slade and more than 50 other individuals were charged in this case with conspiracy to distribute more than 50 grams of cocaine base and 500

grams or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. The

government filed an Information pursuant to 21 U.S.C. § 851 notifying Slade of its

intention to seek enhancement of his sentence based on three prior felony drug

convictions under North Carolina law. On December 1, 2008, Slade pleaded guilty

pursuant to a written Plea Agreement. In section B(2) of the Plea Agreement,

Slade stipulated that he had been convicted of one of the prior felony drug offenses

listed on the Information, and the government agreed not to seek an additional

enhancement based on the two other listed offenses.[1]

In section B(3) of the agreement, Slade also stipulated that the Career

Offender guideline, U. S. Sentencing Guidelines Manual ("USSG") § 4B1.1

(2007), was applicable to him, and that he would not seek a sentence outside of this

guideline range.[2] In that section, he also stated that "I understand other guideline

sections may be applicable to my case and the United States and I will be free to

---

[1] At the time of Slade's sentencing and without this Plea Agreement provision, based on his three prior felony drug convictions, Slade would have been subject to a mandatory life sentence, pursuant to 21 U.S.C. § 841(b)(1)(A) (providing for mandatory minimum sentence of 20 years if there is a prior felony drug conviction and for a mandatory minimum sentence of life imprisonment without release if there are two or more prior felony drug convictions). The agreement reduced his mandatory minimum sentence exposure to 20 years.

[2] The Career Offender guideline provides for an enhanced advisory guideline range if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. A "controlled substance offense" means an offense under federal or state law that is punishable by imprisonment for more than one year. USSG § 4B1.1(b) (2007). The notice requirements of 21 U.S.C. § 851 do not apply to convictions used to establish Career Offender status. *United States v. Redmond,* 667 F.3d 863, 873 (7th Cir. 2012).

argue whether these sections should or should not apply." (Plea Agreement 4.)

Finally, pursuant to sections C(2) and (3) of the Plea Agreement, Slade waived his

right to appeal and "any right [he might] have to collaterally attack, in any future

proceeding, any order issued in this matter."[3] (*Id.* 7-8.)

During the court's guilty plea colloquy, Slade affirmed that he could read

and write and that he was not under the influence of medication, drugs, or alcohol,

other than prescription medications for anxiety and depression which he affirmed

did not interfere with his ability to understand the proceedings. Slade affirmed that

he understood the Plea Agreement and its consequences, the elements of the

charge, the maximum penalty to which he was subject, and the rights he was

waiving by pleading guilty under the agreement. He indicated that he had initialed

each page and signed the agreement to show that he had read it after an adequate

opportunity to review it with his attorney.

The prosecutor then reviewed the agreement's terms, and Slade affirmed that

he understood the terms. I asked Slade, "Are you pleading guilty because you are,

in fact, guilty of this charge?" Slade answered, "Yes, sir." (Plea Hr'g Tr. 15, Dec.

1, 2008.) Slade also indicated that he did not contest any of the facts offered by the

---

[3] Section C(3) of the Plea Agreement stated that if Slade files "any court document seeking to disturb, in any way, any order imposed in [his] case," the government would consider such action to be a violation of the agreement and would be free to apply one of several listed remedies for breach, which included refusal to comply with stipulations as to sentencing. (*Id.* 8.)

prosecutor in support of the guilty plea. I expressly asked Slade if he understood that was waiving his rights to appeal and to collaterally attack the judgment, and he affirmed his understanding. I found that Slade was competent to plead, that there was an independent factual basis for the plea, and the plea was knowing and voluntary. Accordingly, I accepted Slade's guilty plea.

The Presentence Investigation Report ("PSR") prepared prior to sentencing stated that Slade had sold at least 56.7 grams of crack cocaine, that he allowed coconspirators to use his residence to produce crack cocaine from powder cocaine, and that he had observed a coconspirator in possession of at least two kilograms of powder cocaine on three separate occasions, an amount equivalent to 5.28 kilograms of crack cocaine. On these facts, the PSR recommended that Slade be held responsible for at least 4.5 kilograms of cocaine base, resulting in a Base Offense Level ("BOL") of 38 under USSG § 2D1.1(c) (2007). This BOL exceeded the Career Offender BOL of 37 otherwise applicable to Slade under his Plea Agreement stipulation and USSG § 4B1.1(b)(1) (2007).

At the sentencing hearing, Slade's attorney objected to the higher Base Offense Level, but I overruled the objection and adopted the factual findings of the PSR. I found that with his Criminal History Category of V and a Total Offense Level of 35 (taking into account a reduction of three levels for acceptance of

responsibility), Slade's advisory guideline range was 262 to 327 months. I sentenced him to 300 months imprisonment.

Slade appealed. The government did not move to dismiss the appeal pursuant to Slade's waiver of appeal contained in his Plea Agreement. Slade's appointed appellate attorney filed a brief with the court of appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that he believed there were no meritorious issues for appeal, but raising at Slade's request a question as to whether the sentence imposed was procedurally and substantively proper. The court of appeals affirmed. *United States v. Slade*, 371 F. App'x 421 (4th Cir. 2010) (unpublished). The mandate of the court of appeals was issued on April 16, 2010, and certiorari was not sought.

On October 5, 2011, I notified Slade and counsel for the government that I intended to reduce Slade's sentence from 300 months to 269 months pursuant to 18 U.S.C. § 3582(c)(2), based upon the retroactive application by USSG Amendment 750 of the recently-lowered crack cocaine sentencing guidelines. I gave the parties an opportunity to respond. Slade wrote to the court, stating his understanding that Amendment 750 had the effect of lowering the crack cocaine guideline range by two offense levels, which would give Slade an amended guideline range of 210 to 262 months. He asked to receive the § 841(b)(1)(A) mandatory minimum (based upon his Plea Agreement-reduced one prior felony drug offense) of 240 months.

Instead, I found that Slade's stipulation to Career Offender status and the resultant BOL of 37 trumped the drug-weight guideline and left him eligible for no more than a one-level reduction under § 3582(c)(2) and Amendment 750. This calculation rendered an advisory guideline range of 235 to 293 months. On November 8, 2011, I reduced Slade's sentence from 300 months to 269 months. Slade did not appeal.

Several weeks later, on December 24, 2011, Slade wrote a letter to the court (ECF No. 2724), asserting that he had been improperly sentenced based on prior convictions under North Carolina law that no longer qualified as predicates for enhancement in light of *Simmons*, which had been decided on August 17, 2011. I construed this submission as a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 and gave Slade an opportunity to object to this construction or submit a verified § 2255 motion raising his claim. *See Castro v. United States*, 540 U.S. 375, 383 (2003) (holding that before characterizing defendant's motion as a first § 2255 motion, a district court must advise defendant of resulting consequences). Slade elected to proceed and submitted a verified § 2255 motion, and the court required the government to respond.

The government then filed a Motion to Dismiss Slade's § 2255 motion as untimely and as waived pursuant to the Plea Agreement. The government also argued that Slade was not entitled to relief under *Simmons* because his sentence

was calculated under the crack cocaine guideline, rather than the Career Offender guideline, and because his sentence was below the authorized statutory maximum. Reviewing Slade's submissions, I liberally construed them as raising a *Simmons* challenge to his status as a Career Offender upon which the court based its decision in November of 2011 to limit the reduction of his sentence under § 3582(c)(2) and Amendment 750. I directed the government to file a supplement response addressing this issue.

In its supplemental response to the § 2255 motion, the government argued that a modification of sentence under § 3582(c)(2) does not restart the § 2255(f) filing period and does not open the door for reconsideration of previously determined guideline provisions. However, thereafter the government filed a second supplemental response in which it withdrew its § 2255(f) time bar defense.[4] Slade has responded, making the § 2255 motion ripe for decision.

Liberally construed, Slade's motion raises two claims: (1) he is actually innocent of being a Career Offender because his North Carolina convictions no

---

[4] The government appears to base its withdrawal of the statute of limitations defense on the Fourth Circuit's decision in *Miller v. United States*, 735 F.3d 141 (4th Cir. 2013). However, in *Miller* the government had waived its statute of limitations defense, *id*. at 143, and the court held only that *Simmons* could be applied retroactively under those circumstances, *id*. at 147. Nevertheless, the government's intentional waiver of the statute of limitations must be accepted by the court. *See Wood v. Milyard*, 132 S. Ct. 1826, 1833-34 (2012). The government has waived the defense in this court with other § 2255 motions involving *Simmons*. In fact, it waived the statute as to one of Slade's codefendants. *United States v. Morrison*, No. 1:08CR00024-015, 2013 WL 3517333, at *2 (W.D. Va. July 11, 2013).

longer qualify as prerequisites for enhancement under the Career Offender guideline or § 841(b)(1)(A); and (2) in light of *Simmons*, the court erred in accepting the defendant's Plea Agreement under the Career Offender guideline and in sentencing him based upon a drug amount that was neither charged in the indictment nor stipulated in the Plea Agreement.[5]

## II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether a waiver is intelligent and voluntary requires evaluation of the "adequacy of the plea colloquy," with "by reference to the totality of the circumstances." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir.) (internal quotation marks omitted), *cert. denied,* 134 S. Ct. 126 (2013).

"Generally, if a district court questions a defendant regarding the waiver of appellate rights during the Rule 11 colloquy and the record indicates that the defendant understood the full significance of the waiver, the waiver is valid." *Id.*

---

[5] Slade also asserts that based on the 56.7 grams of crack cocaine for which the PSR found him accountable, he should have a BOL of 30, reduced by 4 levels under the Fair Sentencing Act of 2010 and by 3 levels for acceptance of responsibility, for a Total Offense Level of 23. With a Criminal History Category of IV, he calculates his proper advisory guideline range at 70 to 87 months in prison. (§ 2255 Mot. 6A, ECF No. 2981.)

at 528 (internal quotation marks and citation omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion [or claim] that necessarily relies on allegations that contradict the sworn statements." *Lemaster,* 403 F.3d at 221-22. If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotation marks and citation omitted).

If the court concludes that the defendant's waiver of collateral-attack rights was knowing and voluntary, the defendant "cannot challenge his conviction or sentence in a § 2255 motion," unless his claims fall outside the scope of the waiver. *Id.* A valid plea agreement waiver of appellate or collateral attack rights will bar a claim that the sentence is illegal "in light of a subsequent change in the law." *Copeland*, 707 F.3d at 529 (finding *Simmons* claim barred by plea agreement waiver of right to appeal); *United States v. Brantley*, No. 12-4752, 2013 WL 5952217, at *1 (4th Cir. Nov. 8, 2013) (unpublished) (same).

In the *Brantley* case, the district court held that the defendant's sentence of 108 months was unlawful because he no longer qualified as a Career Offender under *Simmons*, granted relief under § 2255, and resentenced the defendant to 27

months of imprisonment. *Id.* The government appealed, and the Fourth Circuit vacated the new sentence under *Copeland* and ordered the court to reenter the original judgment. *Id.* The court of appeals expressly found from the record that the defendant had entered a knowing and voluntary plea and waiver and that his *Simmons* claim "fell within the scope of that waiver," thus barring him from relief under § 2255. *Id.*

The United States argues that Slade's § 2255 claims, challenging the propriety of his sentence under post-conviction changes in the law, are waived under his Plea Agreement waiver of collateral attack rights. Slade argues that his waiver of § 2255 rights was not voluntary, because he accepted the Plea Agreement while "under major duress of receiving a life sentence." (Resp. 1, ECF No. 3078.) He asserts that without this situational stress, he would somehow have recognized that he no longer qualified for enhancements under § 841(b)(1)(A) or the Career Offender guideline and would have rejected the Plea Agreement with its waivers and stipulations. I agree with the government that Slade's waiver bars his current claims.

The record of the guilty plea colloquy reflects that Slade entered a valid guilty plea. Slade does not point to any evidence that "duress" rendered him incapable of entering a knowing and voluntary plea. In fact, he indicated that he was taking medication to address his anxiety and that this medication did not

interfere with his ability to understand the proceedings.  Thus, Slade's challenge to the validity of his waiver is directly contradicted by his statements under oath during the colloquy and must be dismissed as frivolous.  *See Lemaster*, 403 F.3d at 221-22.

Slade also indicated his understanding of the charge and possible punishment, the evidence the government proffered in support of the plea, the rights he was waiving, and the Plea Agreement terms, including the waiver provisions, about which I expressly questioned him.  Neither any evidence that Slade presents in support of his § 2255 arguments, nor his statements to the court, indicate that he was not competent to enter a valid guilty plea, or that he was not voluntarily pleading guilty under all the terms of that agreement.  Therefore, I find that Slade's guilty plea waiver of his right to bring this collateral attack under § 2255 was knowing and voluntary and, therefore, valid.

I also find that Slade's § 2255 claims fall within the scope of his waiver.  His waiver expressly bars him from filing "any court document seeking to disturb, in any way, any order imposed in [his] case."  (Plea Agreement § C.3, ECF No. 1141.)  Slade's claims here raise overlapping grounds on which he believes his guilty plea and sentence are now unlawful under current law, including *Simmons*

and the Fair Sentencing Act.[6] Yet, the sentence Slade received was consistent with the stipulations and terms of his Plea Agreement. Although I found it appropriate to apply the drug weight offense level, rather than the Career Offender level to which Slade had stipulated, his agreement recognized that other guideline sections might apply to him. Because the sentence imposed was "within the appropriate Guidelines range established at the time of sentencing," it was squarely within the frame of his Plea Agreement and its waiver of collateral attack rights.[7] *Copeland*, 707 F.3d at 529-30.

---

[6] Slade argues that when I calculated the appropriate sentence reduction for him under § 3582(c) and Amendment 750, I should have revisited his Career Offender status under *Simmons*. This argument has no merit. The policy statement regarding modification of a sentence under § 3582 does not allow for reconsideration of the previously-determined applicable guideline sections in the course of a § 3582(c) reduction. *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011). When determining the extent of the reduction, the court is permitted to "substitute only the retroactive amendment and then leave all original Guidelines determinations in place." *Id.* Thus, I had no authority at the time of Slade's § 3582 reduction to reconsider his Career Offender status under *Simmons*.

[7] A narrow class of claims may fall outside the scope of an enforceable waiver of collateral attack rights, including claims that: (1) the sentence exceeds the maximum statutory penalty, (2) the sentence rests on a constitutionally impermissible factor such as race, or (3) the defendant was deprived of the assistance of counsel at sentencing. *Lemaster*, 403 F.3d at 220 n.2. None of Slade's claims fit these criteria. He does not assert that he was deprived of counsel or sentenced on any improper basis. Moreover, because I adopted the PSR finding that Slade should be held accountable for 59.7 grams of crack cocaine, both his original sentence of 300 months and his reduced sentence of 269 months are within the statutory maximum sentence of 40 years to which he is currently subject under § 841(b)(1)(B). Thus, Slade has no viable argument that his sentence challenge under *Simmons* falls outside the scope of his waiver of collateral attack rights.

## III

For the stated reasons, I find that Slade's § 2255 claims are waived by his valid Plea Agreement waiver of his right to collaterally attack any order entered in this matter. Therefore, I will grant the Motion to Dismiss based on the waiver and deny Slade's § 2255 motion.

A separate Final Order will be entered herewith.

DATED: February 28, 2014

/s/ James P. Jones
United States District Judge